UNITED STATES of America, Appellee,

v.

**Ricky L. KUTRIP, Appellant.**

No. 81–1215.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 12, 1981.

Decided Feb. 16, 1982.

Robert D. Kingsland, U. S. Atty., Larry D. Hale, Asst. U. S. Atty. (argued), St. Louis, Mo., for appellee.

Canice Timothy Rice, Jr., St. Louis, Mo., for appellant.

Before HENLEY and ARNOLD, Circuit Judges, and BECKER,* Senior District Judge.

WILLIAM H. BECKER, Senior District Judge.

Ricky L. Kutrip appeals his convictions upon Count I (numeral omitted), and Count

---

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

II of an indictment in two counts, each charging a violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2, in the knowing and intentional distribution of methamphetamine, a schedule II controlled substance drug. The offense charged in Count I was alleged to have occurred on or about January 10, 1980. The offense charged in Count II was alleged to have occurred on or about January 15, 1980. The reference to Title 18, United States Code, Section 2, in the indictment gave notice of the contention of the prosecution that the appellant aided and abetted in the alleged distributions and therefore appellant was punishable as a principal. This contention was consistently advanced in the trial by jury from the opening statement of appellee through the closing argument of appellee and covered in the instructions of the District Court.

We affirm the judgments of conviction on each Count.

### Appellant's Contentions On Appeal

Appellant Kutrip requests that the judgment of convictions be reversed and the action be remanded for a new trial [Appellant's Brief (App.Br.) 11] because:

The Trial Court erred in refusing to allow defendant to assert the defense of entrapment as well as that of necessity (App.Br. 6).

When confronted with the contention of the appellee that the alleged error was not preserved for review, appellant adds the contention that:

The District Court committed plain error in failing to instruct on the issue of entrapment (App.Reply Br. 2).

### Appellee's Contentions On Appeal

Appellee, United States of America, contends:

Appellant's complaint is not properly before the Court (Appellee's Brief 10) because of defense counsel's failure to object to the District Court's charge.

The District Court did not commit plain error in failing to instruct on the issue of entrapment. (Appellee's Brief 11).

A review of the evidence is made in order to make a determination of the contention of appellant, that it was plain error to fail to instruct on the issue of entrapment. A summary of the evidence follows.

### The Evidence

In the case in chief the appellee offered the detailed testimony of undercover agent Detective Gregory Skinner (Skinner), a St. Louis police detective assigned to the narcotics division and the testimony of confidential informant Doris Randleman (Doris). The informant Doris, after her earlier arrest on unlawful possession of a controlled drug substance, assisted Skinner in purchasing methamphetamine from a source "Butch", through arrangements by appellant and in the presence of appellant on January 10, 1980, on a Mr. Steak parking lot, and on January 15, 1980, from a source Terry Bourbon (Bourbon) at Bourbon's house. Both sources acted in concert with the appellant. On each occasion, according to the testimony of Skinner, appellant received and counted the purchase money before delivery of the money to the source. And on January 15, 1980, appellant solicited and received from Bourbon an injection of the methamphetamine purchased by Skinner. Skinner and the informant Doris both testified that after the transaction of January 10, 1980, appellant warned the informant Doris not to try to go directly to the source, without going through the appellant first.

Evidence of the identity and chemical analyses of the two lots of methamphetamine substances purchased was offered by appellee.

No evidence to support either the defense of entrapment or the defense of necessity was introduced in the case in chief of the prosecution.

Appellant Kutrip testified in his defense. On direct examination, among other things, he testified in a discursive and equivocal fashion that he had used drugs, mostly methamphetamine, for years; that he had a bad habit using up to $50 to $75 worth of drugs in one night; that he knew the confidential informant Doris who earlier in December 1979 had purchased methamphetamine at appellant's house from "Butch"; that the informant Doris told appellant that she had a supplier who could get appellant all the weed appellant wanted; that the informant Doris knew someone who would like to purchase a large quantity of methamphetamine; that the informant Doris promised appellant some methamphetamine if he found a supply on both occasions; that the informant Doris said she and Ed (Skinner) wished to purchase a large quantity of methamphetamine for a New Year's party or something; that after appellant found out that he could get the methamphetamine, he told informant Doris that he would set up the deal with the source if the informant Doris would supply him a little sample of the purchase; that appellant was using methamphetamine on a continual basis, maybe two or three times a day; that the informant Doris came to appellant's house in December or January around New Year's Eve; that the informant Doris and her cousin were in the market for anything because she was low on her source, her throat was dry and she could use methamphetamine herself; that a guy named "Butch" was at appellant's house and knew a guy who had methamphetamine; that appellant got drugs from Butch and that's how appellant met Bourbon; that after the first sale in which Butch was the source, appellant received a little "dope" from Skinner for setting up the deal, and they talked about setting up another deal; that appellant had met Bourbon, the source of the second sale; that the informant Doris called appellant on his phone close to January 10th wanting to purchase a large quantity of methamphetamine; that Butch had to get hold of his source to find out if he could get that amount; that Butch talked to the informant Doris later before the 10th; that on the 14th or 15th when appellant was at work at Kroger bakery, Doris called him on the telephone, saying she would like to pick up the methamphetamine tonight; that appellant received a call from his father who stated that he was notified by Doris that she would pick up appellant and that his father would not be coming to pick up appellant; that Doris had told appellant that Skinner would pick him up; that appellant was given drugs on the occasions of both transactions; that on both occasions Skinner asked appellant if he would like to count the money so appellant did count the money and handed it back to him; that on the 10th Butch came to the car (on the Mr. Steak parking lot) and asked if appellant had the money; that appellant said "no" so Skinner handed appellant the money, who handed it to Butch and Butch handed Skinner the drugs; that in the automobile Skinner gave appellant ¼ gram of the drug dumped in a cigarette pack; that appellant went and "did" his drugs at 2121 Ruckert, where Bourbon lived; that while sitting in the car Skinner and the informant Doris said they would maybe be interested in buying more if it sold good; that later Doris left a message for appellant's parents to have appellant call her back; that appellant did call Doris, who asked him if he could set up another deal; that appellant said "Hey, I'm not the one who has the drugs"; that appellant would have to talk to Butch and find out; that appellant saw Butch who then asked appellant if appellant knew anybody else that would want to purchase any methamphetamine; that appellant had to call Doris back and appellant told Butch he might know somebody who wanted it; that Butch said "Well, I'll find out tomorrow if I can get it"; that Doris told appellant that "as soon as (appellant could) find out (about getting more drugs) to get a hold of her because they already done sold it, their seven grams, and they would like to get some more"; that the next day Butch said they could purchase it; that before the first sale Doris called appellant a number of times to

see if appellant could purchase assorted drugs for her; that appellant told her that right now he couldn't because his source Butch wasn't around; that appellant did not sell drugs to other people; that appellant "really set the deal up" for Skinner and Doris "because he was offered some drugs"; that appellant counted but did not keep any of the money; that Doris called appellant at work and one time when appellant wasn't at home; that appellant has used drugs since he was fifteen years old and was in dire need of drugs at the time of the transactions, but did not realize it until his source was arrested; that it was "hell" because appellant used anywhere from fifty to seventy-five, maybe one hundred dollars a night in drugs when he could get it, and when he couldn't get it, he would "smoke a joint or something"; that appellant had to have something for his nerves because he "did so much methamphetamine that it 'messed up' his nerves" and he would be up at late hours at night; that on January 10th appellant was already "doing the drug" before Skinner came up during the first transaction in the Mr. Steak parking lot, because Butch had the drug and appellant was at 2121 Ruckert (Bourbon's house), where they looked at the clock to see the time and were running late; that Butch told him to hurry up and see "if them people were up there at Mr. Steak"; that when the "first deal went down on January 10th" appellant did "need a fix at that time", and also on January 15th; that while appellant was driving with Skinner on the evening of January 15th, Skinner offered appellant some drugs which appellant later received; that appellant told Skinner he "wouldn't do it unless he made something out of the deal"; that Skinner asked "what do you want, money?", and appellant said "no, I would like to have a small sample out of whatever you purchased"; and that on January 15th at Bourbon's house after the drugs were transferred, appellant obtained a small quantity of drugs that were injected into his arm.

On cross-examination, appellant Kutrip testified, among other things, that he used drugs in the past, but not any more; that the last time he used methamphetamine was right after January 15th when Bourbon was "popped" (arrested); that Bourbon had become his source; that appellant is getting treatment now for his drug problem; that he is not sick now, but is "kind of shaky"; that when appellant couldn't get methamphetamine he would "just sweat", it would "mess up" his stomach and "like he would get gas", and it still does that to him, possibly because he got methamphetamine and can't now get methamphetamine; that Doris came to appellant's house when Butch was there and Doris and appellant bought methamphetamine from Butch; that appellant started working around January 15th; that appellant was doing methamphetamine at most as much as one hundred dollars a day; that appellant got the methamphetamine from Butch, and on some occasions would steal to pay for the cost; that when appellant had the money he would do seventy-five to one hundred dollars of drugs a week, but when "he went out and steal" he only bought what he could afford to buy at that time, say if he "stole a car stereo..."; that he did as much as seventy-five to one hundred dollars of drugs in one day, but most of the time received forty to fifty dollars a stereo and would have to "go out and get more," but would "do it just to supply" his source; that on January 10th, 1980, he met and participated in a drug transaction with the informant Doris and Skinner; that appellant set up the meeting on January 10, but not on January 15th; that Butch set up the meeting on January 15th; that Skinner and Doris couldn't get a hold of Butch, and appellant thinks that is why Skinner and Doris called him; that in a way Doris lied when she said appellant called her because she left a number for appellant to call back; that on January 10th appellant got in Skinner's car; that appellant didn't ask for the money; that they asked appellant if he wanted to count the money; that if Skinner says that appellant asked him for the money he is not telling the truth; that appellant had never met or seen Skinner before January 15,

1980; that appellant remembers being in the car on the parking lot of the Mr. Steak Restaurant after Butch got out of the car; that if Skinner says that appellant warned Doris about "jumping" appellant's connection, Skinner is not telling the truth; that on January 15th he doesn't recall asking Doris for a ride because Doris called him at work; that Doris was going to pick up appellant to take him to 2121 Ruckert; that, on a pay phone at work, appellant called his dad to tell him; that his dad said he was already notified and appellant called Doris to tell her it was okay because his dad said he was already notified; that appellant didn't call Doris to ask her for a ride; that Doris called appellant and asked if he "could do it tonight" and appellant said "well, I don't have no transportation" and Doris said "well we can take care of that" because Skinner lived near the neighborhood and would be able to pick appellant up from work; that Skinner picked up appellant and Doris and drove to the Mr. Steak parking lot; that (on January 15th) they picked up Doris at another parking lot, then went to the Mr. Steak parking lot where Skinner parked his car and appellant went down to meet Bourbon whom appellant had met before on January 10th; that Bourbon let appellant in his house and appellant told Bourbon "the same people that purchased the methamphetamine from Butch wanted to know if they could come in and buy it because they did not want to hand me that much money without seeing the drug"; that Bourbon said it was okay even though he had met appellant only two times before; that that didn't strike appellant as odd because all he was "worried about was getting them drugs"; that Skinner gave appellant methamphetamine on January 10, 1980, after the transaction was completed; that if Skinner said he never gave appellant any methamphetamine on January 10, 1980, he would be lying; that on January 15 appellant asked Skinner for something for setting up the transaction as he had promised after Skinner had been handed the drug by Bourbon; that appellant set up the deal; and that appellant did not call Doris on

January 14th and ask if she would be interested in a variety of drugs.

On redirect, appellant testified that he did not recall stating on cross-examination that he had set up the deal on January 10th; that he did meet with Doris Randleman at the end of December 1979; and that Butch set up the deal on January 10th.

In rebuttal, the appellee recalled Skinner who testified that prior to, during or after the January 10, 1980, transaction he did not promise or give appellant any drugs of any type; that there is no doubt that appellant on January 10, 1980, entered the car and asked Skinner for the money; that Skinner never met appellant prior to the transaction of January 10, 1980, and had never heard of him before; that on the 15th, at the Bourbon residence, appellant asked Skinner to hand him the money and asked for a "little something out of the bag for having set up the deal"; and that during the January 10th and January 15th transactions appellant was not in "any way, shape or form in any type of physical distress".

I.

■ *The appellant Kutrip has not preserved for review the assignment of alleged error of the District Court in refusing to instruct on the issue of entrapment as well as necessity.*

It is clear that the appellant's counsel failed to make any objection to the failure of the District Court to give an instruction on the defense of entrapment (a) when the District Court ruled on the giving and refusing of instructions, or either (b) before the charge was delivered or (c) after the charge was delivered.

The record clearly discloses that on Tuesday, February 3, 1981, after the conclusion of all the evidence the preceding day, an instruction conference was held during which appellant's counsel "requested a jury instruction on the defense of entrapment as well as one on the defense of necessity; that the Court ruled that it would submit

an instruction on either defense but not on both; that he (appellant) then chose an instruction on necessity, which the Court later submitted; (and) that the entrapment instruction which he requested as well· as that proffered by the Government are attached hereto marked A and B respectively . . . ." Affidavit of counsel for appellant approved in the District Court's Order Correcting Record (Supplemental Record 34–39). (In this opinion it is assumed, without so ruling, that the instructions on the issue of entrapment were correct in form and substance.)

Thereafter, the following occurred in Chambers at the instruction conference before arguments and delivery of the charge:

THE COURT: For the record, let the record show we're in chambers on the morning of Tuesday, the 3rd day of February, that shortly after 9:30 A.M.; that the Court has gone over informally with counsel instructions and the Court is giving instructions numbered in sequence from 1 to 18—pardon me, 1 to 19, as offered by both the Government and the defendant. The Court is refusing the opening instruction, "Members of the jury," offered by the Government; "identification," which is not at issue; "entrapment" which is not at issue and a duplication of "defendant who wishes to testify." I've numbered those X–1, X–2, X–3 and X–4 is Government's instruction on necessity, which I'm not giving because it isn't as complete as the one offered by defense.

For the Government, do you have any objection to the proposed charge?

MR. HALE (for the prosecution): Your Honor, only with respect to defendant's instruction concerning the testimony of the informant, the Government would object on the grounds it may not constitute a correct statement of the law.

THE COURT: Well, the evidence is that she was told that somebody passed the word, and I think that covers it.

MR. HALE: Okay.

THE COURT: Other than that, do you have any objection?

MR. HALE: I have no other objections.

THE COURT: Do you have any additional instructions you desire the Court to give?

MR. HALE: No, we have no additional ones.

THE COURT: For the defendant, do you have any objections to the proposed charge?

MR. RICE (for the defense): No, Your Honor.

THE COURT: Do you have any additional charge you want the Court to give?

MR. RICE: I do not.

THE COURT: You may refer to these instructions, gentlemen, in the argument. As you know, they do not go to the jury in Federal Court. You may refer to them by saying: I anticipate the Court will instruct you as follows. [Transcript (Tr.) 139–140].·

After the arguments of counsel to the jury and the delivery of the charge to the jury, the following further proceedings occurred at the bench:

THE COURT: Record will show that all comments or statements made by counsel in chambers will be fully reincorporated in the record at this time.

With that understanding, for the Government, do you have any further objection to the charge as given?

MR. HALE: Your Honor, I have no further objections.

THE COURT: Do you have any additional charge you desire the Court to give?

MR. HALE: No, I do not, Your Honor.

THE COURT: For the defendant, do you have any further objections to the charge as given?

MR. RICE: I do not, Your Honor.

THE COURT: Do you have any additional charge you desire the Court to give?

MR. RICE: No, Your Honor. (Tr. 170–171).

Rule 30, Federal Rules of Criminal Procedure (F.R.Cr.P.), effective in its present form in 1966, provides as follows:

At the close of the evidence or at such earlier time during the trial as the court

reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Appellant was given ample opportunities to object to the failure of the District Court to include an instruction on entrapment in the charge as given. So, in the absence of exceptional circumstances not present in this case, under Rule 30 F.R.Cr.P., the appellant may not assign as error the omission of the instruction on entrapment. 2 Wright, *Federal Practice and Procedure*, § 484 pages 284 to 292, and 1980 Supplement, § 484 pages 443 to 446. So under Rule 30 F.R.Cr.P., this Court need not consider this assignment of error, in the absence of plain error as provided in Rule 52(b) F.R.Cr.P. *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965) construing an identical provision of an earlier version of Rule 30; *United States v. Byrd* (C.A. 8 1976) 542 F.2d 1026 at 1028 and cases therein cited.

Appellant has invited attention to the instruction on entrapment submitted by him. However, submission of a requested instruction does not satisfy the requirement of Rule 30, F.R.Cr.P. *United States v. Byrd, supra*, 542 F.2d at 1028 and authorities therein cited; 2 Wright, *Federal Practice and Procedure*, § 484 and 1980 Supplement.

On the basis of Rule 30, F.R.Cr.P., and the authorities cited above, we hold that the appellant is foreclosed from raising this assignment of error on appeal.

This leaves for consideration appellant's contention that the omission of an entrapment instruction was plain error.

## II.

■ *The failure to instruct on the defense of entrapment was not plain error under Rule 52(b) F.R.Cr.P.*

We conclude that the failure of the District Court was not plain error for the following reasons:

1. The appellant for tactical reasons chose, in effect, to withdraw the request for an entrapment instruction in favor of a questionable necessity instruction based on the theory that he committed the acts, ordinarily constituting the alleged violations, out of an irresistible impulse arising from his claimed drug addiction. On the interesting history and elements of the defense of necessity, see 1 *Wharton's Criminal Law* (Torcia's 14th ed.) § 88 at pages 409–414 and 4 *Wharton's Criminal Law* (Torcia's 14th ed.) § 673 at pages 441–443.

2. The District Court did not commit plain error in treating the entrapment defense as inconsistent with the necessity defense under the complex discursive and equivocal testimony of the appellant on direct examination. It is not necessary to make the legal conclusion that the failure to give both the entrapment instruction and the necessity instruction was error. It obviously was not plain error, and may not have been error in any degree.

3. Appellant plead not guilty and maintained that he did not knowingly and voluntarily commit the offenses charged in the indictment. Under these circumstances the great weight of authority holds that the defense of

entrapment is not available. 1 *Wharton's Criminal Law* (Torcia's 14th ed.) § 52 at page 267.

As noted above the evidence of the prosecution did not make a submissible defense of entrapment. Under these circumstances there is some authority that an inconsistent defense of denial of the commission of the offense renders the defense of entrapment unavailable, though there is authority to the contrary. 2 Wright, *Federal Practice and Procedure* § 495, notes 39 and 40 at pages 323 and 324; 1 *Wharton's Criminal Law* (Torcia's 14th ed.) § 52 at page 247 *et seq.*; Annotation, *Modern Status Of The Law Concerning Entrapment To Commit Narcotics Offense—Federal Cases*, 22 A.L.R.Fed. 731; 21 Am.Jur.2d, *Criminal Law*, §§ 202–209.

In the unique circumstances of this case we decline to hold that the District Court committed plain error, if it committed any error at all.

4. It is at least debatable that appellant did not make a submissible case of entrapment and that no instruction on entrapment was appropriate. Appellant in his testimony to support the necessity defense admitted being an addict, admitted arranging the transactions to secure a part of the methamphetamine sold, admitted securing possession of a part of the methamphetamine sold and admitted injecting a part of the drug in his body. Under this testimony there was no clear right to an entrapment instruction sufficient to support a claim of plain error. In *United States v. Harper* (C.A. 5 1974) 505 F.2d 924 at page 926 it was held:

> Appellant argues the court should have instructed the jury on entrapment. At no time during the trial did appellant raise the defense of entrapment. He denied having any part in the transaction or committing any act which constituted a crime. In *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d

366 (1973), the United States Supreme Court reviewed the history of entrapment and decided to leave the matter where it stood in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Where the defendant is predisposed to commit the crime, there is no entrapment; only when the government's deception implants the criminal design in the mind of the defendant does the defense of intrapment come into play.

The initial burden to prove entrapment was on appellant to go forward with some evidence, more than a scintilla, that the agents induced him to commit the offense. As we stated in *United States v. Groessel*, 5 Cir., 1971, 440 F.2d 602, 606: "If a defendant fails to carry the burden on the issue of entrapment forward, he is not entitled to submission of the issue to a jury". Appellant here admitted he was on drugs, including heroin, at the time of the alleged sale. He admitted discussing drug sales with the DEA agent. He admitted having the heroin in his hand at one time. Appellant was predisposed to commit the crime. He has not met the initial burden of going forward. He was not entitled to an entrapment instruction.

On the doctrine of entrapment generally see the opinion of Judge Henley in *United States v. Quinn* (C.A. 8 1976) 543 F.2d 640.

5. If there was any error in failing to give the instruction on entrapment, it has not been demonstrated that the failure affected substantial rights of the defendant resulting in a miscarriage of justice. *United States v. Big Crow* (C.A. 8 1975) 523 F.2d 955 at pages 960–961 of the opinion of Judge (now Chief Judge) Lay, *cert. denied*, 424 U.S. 920, 96 S.Ct. 1126, 47 L.Ed.2d 327 (1976).

## CONCLUSION

Failing to find any assigned or plain error, we hereby affirm the judgment of the District Court.