**UNITED STATES, Appellee,**

v.

**Keith BUCHANNON, Appellant.**

**No. 88–2527EM.**

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1989.

Decided June 26, 1989.

Rehearing and Rehearing En Banc Denied Sept. 7, 1989.

James J. Knappenberger, St. Louis, Mo., for appellant.

James E. Crowe, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and DUMBAULD *, U.S. Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant, Keith Buchannon, convicted of possession of eleven ounces of cocaine (street value $11,000 to $22,000) with intent to distribute in violation of 21 U.S.C. § 841(a)(1),[1] contends that the drugs found on his person and in a bag referred to as his child's diaper bag were unlawfully seized and inadmissible as evidence. We affirm.

The circumstances of the case are somewhat unusual. Enforcement officers were conducting surveillance of the residence of one Darnell Parker in St. Louis while colleagues were obtaining a search warrant for the premises. There was ample probable cause for issuance of the warrant, but nothing implicating Buchannon until he was seen entering the house, carrying a baby in his arms and a bag referred to as a diaper bag draped over his shoulder. Soon thereafter he left the house carrying the baby and the bag and drove off in his car. Leaving with him were Parker, Mrs. Parker, and another adult male. They drove off in another car, which the Buchannon vehicle followed. This information was radioed to the officer in charge, who was then en route with the search warrant. He directed that the two cars be stopped and the occupants advised of the search warrant.

Officer Tony Coleman, of the St. Louis County Police, who was aiding the federal agents in the pursuit of the two cars, noticed appellant leaning away from the steering wheel and making movements toward the passenger side of Buchannon's car. Coleman flashed his red light and appellant stopped his car and got out. Coleman directed him to pull into a less busy parking lot, where appellant again got out of his car and approached the officer.

Coleman advised him of the search warrant and said he would "pat down" the appellant, a large man, as a usual safety precaution. During this process Coleman felt a hard object (it turned out to be a compact disc) and when he put his hand in appellant's overcoat pocket he also found two plastic baggies of cocaine. Buchannon was then placed under arrest.

Later at the First Precinct station the arresting officer advised drug agent Vollmar of the plastic bags and Vollmar took them from appellant's coat and placed him in a holding cell.

At the station Mrs. Parker, identifying herself as the baby's godmother, was caring for appellant's baby. When the baby cried, Mrs. Parker asked for the diaper bag in order to change the baby's diaper. Vollmar first made a security check of the bag and found nine plastic bags of cocaine packaged like those from Buchannon's pocket.

As well summarized in Appellants Brief (p. 13) his argument is

> that the seizure of the Defendant made by a patrol officer who did not know him, who had no warrant for his arrest, who had never seen the man before, who did not observe him commit any violations or crimes and stopped him or seized him at the sole request of a DEA agent while in traffic amounted to an arrest without probable cause. Further, Defendant argues that the detention was followed immediately by a pat down when there were no exigent circumstances warranting this violation of the law.

■ Similarly with respect to the nine ounces of cocaine from the diaper bag he contends that failure to obtain a search warrant was a gross violation of his rights and "that the crying of a baby and the need for a diaper was not an exigent circumstance warranting a violation of Defen-

---

* The Honorable Edward Dumbauld, U.S. Senior District Judge, sitting by designation.

1. 21 U.S.C. § 841(a)(1) reads, in pertinent part: it shall be unlawful for any person knowingly or or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

dant's constitutional rights to be secure in his effects." [2]

■ But the arresting officer's conduct is not to be judged in isolation. Its propriety is to be determined in view of the totality of circumstances known to the law enforcement officers as a group at the time. *U.S. v. Hensley,* 469 U.S. 221, 231, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985); *U.S. v. Reed,* 733 F.2d 492, 502 (8th Cir.1984).[3] Officer Coleman was simply an additional ministerial agent assisting in Vollmar's investigation. There was probable cause to detain appellant as a purchaser from Parker, a known seller. His visit to the house, carrying a bag and departing a short time later, conformed to the patterns of the drug trade.

Moreover, the simultaneous departure from the house of the two vehicles as a caravan would justify a stop to maintain the status quo and ensure that the seller's supply of drugs was not being moved to a new location. *U.S. v. Hensley,* 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985); *U.S. v. Eisenberg,* 807 F.2d 1446, 1451 (8th Cir.1986).

■ Officer Coleman was justified in "patting down" Buchannon by the well-settled rule announced in *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968). Officer Coleman was alone and appellant was a larger man, wearing a long winter coat which might have concealed a weapon. A routine "frisk" was a prudent precaution. Coleman did not arrest appel-

lant until after discovery of the cocaine (if this was not a "plain view" case it may be called a "plain feel" case). There is no requirement that *Miranda* rights warnings be read before making an arrest. *Miranda* requires the ceremony only before custodial *interrogation.* It does not prohibit arrest without admonition. Even if "he who runs may read," an officer apprehending a fleeing felon may wisely save his breath for the chase and defer the *Miranda* ritual until ready to begin questioning the suspect at the station house.

■ Similarly, the security search of the "diaper bag" was reasonable and justified without a warrant. It would be insensitive to disregard the baby's cries until going through the procedures for getting a search warrant. The circumstances were sufficiently "exigent" to satisfy the *Terry* standard. Moreover, it may convincingly [4] be argued, as the appellee's brief does (p. 14), that the search was justifiable as an inventory search [*Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 644–45, 103 S.Ct. 2605, 2608–09, 77 L.Ed.2d 65 (1983) ] or as incident to arrest outside a motor vehicle [*N.Y. v. Belton,* 453 U.S. 454, 457, 460, 101 S.Ct. 2860, 2862, 2864, 69 L.Ed.2d 768 (1981); *U.S. v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982) ].

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.

---

2. Appellants' brief, pp. 13–14. Appellant also argues that it was error to deny appellant's belated motion to strike a question on cross-examination "Isn't it a fact that you paid $11,000.00 for the cocaine carried in a maroon briefcase?" to which appellant answered in the negative. The Court gave a cautionary instruction that lawyer's questions are not evidence. That was a sufficient curative precaution, even if the question was improper. Apparently when the search warrants were executed, $11,000.00 *was* discovered on the premises; and eleven ounces of cocaine had been found in appellant's possession. The prosecutor was not just "fishing." In any event, in view of appellant's clear guilt, any error was harmless. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

3. A recent Third Circuit case, *Capone v. Marinelli,* 868 F.2d 102, 104–105 (3rd Cir.1989), supports the conclusion that a police officer may act upon the basis of good faith reliance upon information received from other officers by means of modern technology. That case is *a fortiori,* since the charges against Capone were ultimately dropped, rather than resulting in conviction, as in the case at bar. Yet the Court held nonetheless that the arresting officers were protected by immunity.

4. More tenuous and questionable is the appellee's further argument of "consent" by Mrs. Parker as the basis of search. She did identify herself as the baby's godmother, and did babysit at least once a week. See *U.S. v. Baswell,* 792 F.2d 755, 758–59 (8th Cir., 1986).

FAGG, Circuit Judge, dissenting.

Because I believe the evidence obtained after police officers stopped Keith Buchannon's car was illegally seized, I respectfully dissent.

To the officers working on the Darnell Parker surveillance, Buchannon was a completely unknown quantity. None of the confidential informants cooperating in the investigation had implicated him in Parker's suspected drug activities, nor had any facts developed as a result of the ongoing surveillance that tied Buchannon to the operation. When Buchannon left the Parker house on January 7, 1988, his specific identity was unknown to the surveillance team. Indeed, none of the officers even recalled seeing Buchannon before, and so far as the officers knew, Buchannon had not visited Parker's house before that day. At least one officer, however, did know Buchannon was not the operation's primary target, Parker.

Buchannon did not exhibit any suspicious or threatening behavior when he entered or left the house. He merely went into the house and emerged carrying his infant daughter and a diaper bag, got into his car, and drove away in the same general direction as the car carrying Parker and two other individuals. None of the officers involved observed Buchannon commit any crime, including so much as a traffic violation, at any time before they stopped his car.

In my view, the initial decision to stop Buchannon's car was not justified by the collective facts then known to the officers. First, the seizure did not qualify as an investigatory stop based on the reasonable, articulable suspicion that Buchannon was involved in criminal activity. *See United States v. Sokolow*, — U.S. —, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989); *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (per curiam); *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968); *United States v. Campbell*, 843 F.2d 1089, 1093 (8th Cir.1988). The only facts arguably tying Buchannon to the suspected drug house are that he physically appeared there, entered, left at the same time as the target of the investigation, and drove his own car for a short distance in the same general direction as the target. These activities do not, in and of themselves, suggest criminal activity and could be performed by " 'a very broad category of predominantly innocent [visitors to the house],' " *Campbell*, 843 F.2d at 1094 (quoted citation omitted).

Furthermore, by far the bulk of the officers' incriminating information did not "directly relat[e] to [Buchannon] or [his] conduct," *id.* at 1093, but to Parker, with whom Buchannon had no known improper connection. In the absence of some additional factors suggesting Buchannon's involvement in the drug operation or with Parker, I cannot agree these circumstances amount to the objective, reasonable suspicion necessary to conduct a *Terry*—type stop. Consequently, the officers were not justified in performing any of the searches that followed the initial seizure, regardless of the contraband we now know they yielded.

Second, in view of my position that there was no basis for an investigatory stop, I necessarily disagree with the court's more factually demanding decision that "[t]here was probable cause to detain [Buchannon] as a purchaser from Parker, a known seller," *ante* at 1067. Nor is there any indication Parker sensed his house was under surveillance and had enlisted Buchannon to help "move[ ] [the drug supply] to a new location." *Id.* at 1067. To reach the court's conclusions based on the facts known about Buchannon at the time requires engaging at this point in nothing more than impermissible, hindsight speculation. In doing so, the court essentially permits the warrantless detention and search of an innocent appearing individual who made an unexceptional contact with the occupants of a suspected drug house.

Thus, I would reverse Buchannon's conviction and remand the case for a new trial.