**UNITED STATES of America, Appellee,**

v.

**John Henry GRIFFIN, Appellant.**

**No. 89–5530.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1990.

Decided Aug. 1, 1990.

Barry V. Voss, Minneapolis, Minn., for appellant.

Elizabeth de la Vega, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

John Henry Griffin appeals from a judgment of the district court [1] entered upon a jury verdict finding him guilty of conspiracy to distribute heroin and possession with the intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1). We affirm.

On appeal Griffin challenges a December 10, 1988 vehicle stop, which arose as follows. Since the spring of 1988, the Minnesota Bureau of Criminal Apprehension (BCA) and the Federal Bureau of Investi-

1. The Honorable David S. Doty, United States District Judge, District of Minnesota.

gation had been investigating a large scale heroin distribution operation. Initially Griffin was a target of the investigation. The investigation later focused on Martha Taylor. Wiretap interceptions revealed that a major heroin transaction involving Reuben Vera, a courier from California, would take place on December 10, 1988 at a home being used by Taylor at 109 West 39th Street in Minneapolis, Minnesota. Around 8:00 a.m. on that day agents began surveillance at the residence. On arrival agents observed a white Chrysler Cordoba parked in front of the home. Several days earlier agents had observed the same automobile parked at a cabin used by Taylor in Hinckley, Minnesota.

BCA Agent Thomas Fossum arrived at the residence between 10:00 and 10:30 a.m. in an unmarked car and observed Griffin walk from the front of the house to the Cordoba and return to the house. Via radio transmission, BCA Agent Lee Urness informed Fossum that Griffin had again left the residence with a female and that Griffin, who was carrying a small item, had entered the Cordoba on the passenger side and the female entered on the driver side.

Fossum followed the Cordoba about nine blocks to the 3700 block of Stevens Avenue. Fossum saw the automobile pull to the curb and suspected that the occupants were aware of the surveillance. Fossum lost sight of the automobile for about thirty seconds. When he reestablished surveillance, he saw Griffin standing outside the car leaning into the passenger side and manipulating something in the front seat. Fossum decided to stop the automobile.

The Cordoba then pulled away from the curb. Fossum saw Griffin look over his shoulder. Fossum radioed other agents to assist in the stop. Fossum pulled alongside the automobile, displayed a red emergency light in his hand, and motioned the driver to pull over. The driver pulled to the curb and Fossum positioned his car slightly in front of the Cordoba. Griffin began screaming at the driver, who then sped away. A high speed chase ensued. The Cordoba stopped after colliding with another car.

Griffin fled, but was captured and arrested shortly thereafter. Agents seized from him twenty-five grams of cocaine, an address book, $909.00 in cash, and 64.7 milligrams of black tar heroin. In the car they found a cellular briefcase telephone. At the police station officers seized a syringe in Griffin's sock and a bag containing 1.6 grams of black tar heroin was found in his underwear. In an inventory search of the Cordoba agents seized $3,000.00 in cash, a telephone pager, heroin packaging items, and a scale. In the subsequent search of the 39th Street address agents seized 220 grams of black tar heroin.

■ Griffin argues that Agent Fossum did not have a reasonable suspicion to stop the Cordoba, because Fossum had testified at the suppression hearing that he had not personally observed Griffin leave the 39th Street residence, but only assumed that he did based on Agent Urness's radio transmission. Contrary to Griffin's suggestion, Fossum's conduct "is not to be judged in isolation. Its propriety is to be determined in view of the totality of the circumstances known to the law enforcement officers as a group at the time." *United States v. Buchannon*, 878 F.2d 1065, 1067 (8th Cir. 1989). Officers " 'may act upon the basis of good faith reliance upon information received from other officers by means of modern technology.' " *Id.* at n. 3 (quoting *Capone v. Marinelli*, 868 F.2d 102, 104–05 (3d Cir.1989)). In this case, Urness testified at trial that he had observed Griffin leave the 39th Street residence and so informed Fossum. Fossum therefore had reasonable suspicion to stop the Cordoba.[2]

■ Griffin also argues that the district court erred in refusing his requested

**2.** We note that in *Buchannon* a divided panel of this court held there was probable cause to detain an individual who had entered a suspected drug house and departed a short time later carrying a bag because the actions "conformed to the patterns of the drug trade." 878 F.2d at 1067. In addition, this court found that the departure of vehicles from the house justified "a stop to maintain the status quo and ensure that the seller's supply of drugs was not being moved to a new location." *Id. See also United States v. Houston*, 892 F.2d 696, 702–03 (8th Cir.1989).

jury instruction on the defense of necessity. Griffin proposed to instruct the jury that his possession of heroin was not voluntary because he possessed the drug out of "necessity" caused by his heroin addiction.[3] The defense of necessity is not applicable to the facts of this case. "Traditionally, courts have applied the necessity defense when the actor's choices were dictated by physical forces beyond the actor's control, ... and have considered the defense of necessity when ... the defendant assertedly acted in the interest of the general welfare." *United States v. Dorrell,* 758 F.2d 427, 430 n. 2 (9th Cir.1985) (citing, *e.g., United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)). "The theory of necessity is that the defendant's free will was properly exercised to achieve the greater good[.]" *United States v. Contento–Pachon,* 723 F.2d 691, 695 (9th Cir.1984); *see also* W. LaFave & A. Scott, *Handbook on Criminal Law,* § 50 at 382 (1972) (necessity defense based on policy that "the law ought to promote the achievement of higher values at the expense of lesser values").

In this case, the district court properly refused Griffin's requested instruction because "he did not act to promote the general welfare." *Contento–Pachon,* 723 F.2d at 695. Even if a defendant purportedly acts on behalf of the general welfare, a necessity defense is unavailable if there is a reasonable alternative to violating the law. *United States v. Kabat,* 797 F.2d 580, 591 (8th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987). In any event, mere addiction to drugs is not a defense to charges of conspiracy to distribute and possession with intent to distribute. *Cf. United States v. Blackner,* 901 F.2d 853, 854–55 (10th Cir. 1990) (and cases cited therein).

We have also considered Griffin's arguments raised in his pro se brief and find them to be without merit.

3. In *United States v. Kutrip,* 670 F.2d 870, 876 (8th Cir.1982), this court called the use of such

Accordingly, the judgment of the district court is affirmed.

an instruction questionable.