I agree with the majority in its finding that there was no reasonable suspicion for the initial stop of the automobile in which the appellant was riding as a passenger.
In denying a motion to suppress after an evidentiary hearing, the trial court entered a written order in which he made the following findings:
 "1. The court finds from the evidence that the automobile in which the defendant was riding at the time in question [between 1:00 and 3:00 in the morning] was stopped by the Daphne police after it was driven several times through a commercial area with a high burglary rate. The driver of the automobile did not produce a drivers' license upon demand. The police then patted-down the driver, the defendant and passenger for weapons.
 "2. After determining the driver had no license, the police inquired of the defendant and the other passenger so that one of them could drive the vehicle. Neither of them had a drivers' license. Therefore, they were not allowed to operate the motor vehicle. At that time the defendant, from aught that appears from the evidence, was free to walk away from the vehicle. There is no evidence in the record that at any time the defendant was required to remain at the scene or that his freedom was restrained in any manner until his arrest.
 "3. The police determined that there were two alias writs of arrest for the defendant for failure to appear in the Daphne Municipal Court. At the time the police went to arrest the defendant an officer observed him sticking a cellophane or plastic bag into his pants waistband. The officer retrieved the bag which contained what he believed to be marijuana.
 "4. Title 32-6-9 provides that every licensee shall have his drivers' license in his immediate possession at all times when driving a motor vehicle and shall display the same upon demand of a peace officer. Therefore, the police officer had the statutory right to stop the driver of the automobile in which the defendant was riding and ask to see his license. Therefore, the initial stop was lawful.
 "5. The defendant was free to leave the scene after he had been patted down and given his name to officers. He was only *Page 1287 
restrained from operating the motor vehicle.
 "6. The officer having seen what he believed to he a bag containing contraband in plain view while attempting to arrest the defendant, the court determines that the search was lawful." CR. 16-17.
The initial stop of the appellant was not based on reasonable suspicion. The fact that the automobile was driven several times through the commercial district cannot be considered in determining whether the stopping officer had reasonable suspicion to stop the vehicle. This evidence was provided by another officer who arrived at the time of the stop. There is no indication of any communication between the stopping officer and the other officer. Compare United States v.Griffin, 909 F.2d 1222 (8th Cir. 1990) (facts reported to stopping officer by another officer are just as good as if observed first hand by stopping officer), cert. denied,498 U.S. 1038, 111 S.Ct. 708, 112 L.Ed.2d 697 (1991).
"[C]onduct which might be deemed innocuous in the daytime might be viewed otherwise at night." 3 W. LaFave, Searchand Seizure § 9.3(c) at 441 (2d ed. 1987). "Yet another factor which is commonly taken into account by the police is whether the individual 'fits' the area in which he is found." 3 LaFave at § 9.3(c) at 451. The "time of day and nature of the area" are important factors to consider in determining the existence of reasonable suspicion. 3 LaFave at § 9.3(c) at 440.
 "[D]ue regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."
Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966).
"The standard for allowing a Terry stop is whether there is a reasonable suspicion that 'the person being stopped has engaged in some type of criminal activity.' " Ex parteCarpenter, 592 So.2d 627, 629 (Ala. 1991).
 "The proper test is not whether the conduct of the car itself was 'consistent with innocent behavior,' but rather whether the officers were reasonable, under all of the circumstances, in believing that the car or its occupants, were involved or about to become involved in criminal activity. See United States v. Ward, 488 F.2d 162, 169 (9th Cir. 1973) (en banc).
 "Clearly, the officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. The test is founded suspicion, not probable cause. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent. 'A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)."
United States v. Holland, 510 F.2d 453, 455 (9th Cir.), cert. denied, 422 U.S. 1010, 95 S.Ct. 2634,45 L.Ed.2d 674 (1975) (emphasis in original) (footnote omitted).
In Harris v. State, 568 So.2d 421, 425 (Ala.Cr.App. 1990), I dissented from the majority's holding that there was no reasonable suspicion to stop the vehicle. My dissent was based on my belief that the officer rightly stopped the car in that case because the vehicle was being driven at a time,in a place, and in a manner that was suspicious. InHarris, the car was being driven "real slow" after midnight in a residential area where a number of automobile thefts and burglaries had been reported. Here, there is no evidence that the stopping officer observed or had been told anything that would indicate the vehicle was being driven in some unusual manner. "[V]ehicle stops have been upheld when *Page 1288 
officers saw an automobile being driven in a manner and at a time suggesting that an area was being 'cased.' E.g.,United States v. Rickus, 737 F.2d 360, 362, 364-66 (3d Cir. 1984) (reasonable suspicion found when officers saw a car moving slowly back and forth at 3:30 a.m. through business district and into a nearby residential area where numerous unsolved nighttime burglaries had occurred)." United Statesv. Basey, 816 F.2d 980, 989 n. 14 (5th Cir. 1987). "TheTerry rationale does not, of course, support stopping a vehicle merely because it is a stranger to the officers and the neighborhood. See United States v. Beck,602 F.2d 726, 729 (5th Cir. 1979)." Basey, 816 F.2d at 989.
Here, the stopping officer's reason — "I thought it [three white males in that place at that time] to be a little bit out of place" (R. 10) — was an insufficient articulation of reasonable suspicion. "Such generalities as 'he didn't look right' will not suffice." 3 W. LaFave, Searchand Seizure § 9.3(a) at 427 (2d ed. 1987). See alsoBrown v. Texas, 443 U.S. 47, 99 S.Ct. 2637,61 L.Ed.2d 357 (1979) (officer's assertion that defendant "looked suspicious" insufficient).
Furthermore, my finding of reasonable suspicion in my dissent in Harris was partially based on the particular area involved. Here, it appears that the automobile was stopped in a well traveled area. Merely to describe the area as a "business" or "commercial" district may be misleading because the area is specifically described as one "quarter of a mile from Highway 98 and the intersection of 1-10." R. 13.
For these reasons, I concur with the majority's finding that there was no reasonable suspicion for stopping the automobile in which the appellant was riding as a passenger.