SABERS, Justice.
[¶ 1.] Arvin Aaberg (Aaberg) was indicted on two counts of driving while under the influence of an alcoholic beverage, second offense. Aaberg made a motion to suppress all evidence, claiming law enforcement did not have reasonable suspicion to perform an investigatory stop. The magistrate court granted the motion and issued an order suppressing the evidence. The State appeals. We reverse.
FACTS
[¶ 2.] On January 2, 2005, at approximately 10:00 p.m., Sioux Falls Police Officer Nathan Kelderman, (Kelderman), was assisting another officer in taking a report for a stolen vehicle. Kelderman was sitting in his patrol car when a vehicle approached and started to turn into the parking lot of the Stoplight Lounge (the lounge). The vehicle was driven by Aa-berg. The city streets and the parking lot were covered with ice.
[¶ 3.] Aaberg did not appear to commit any traffic violations while pulling into the parking lot. Nor did he drive erratically or in a manner that indicated he was impaired. Kelderman continued to observe Aaberg after he parked his vehicle. Aa-berg exhibited a great deal of difficulty in attempting to exit his vehicle. He walked towards the entrance of the lounge at a very slow and cautious pace. Kelderman recalled that Aaberg’s pace was far slower and more deliberate than an average person on similar conditions. Aaberg held his arms away from his body in an effort to keep his balance. At one point, Aaberg almost fell on the pavement. Based on these observations, Kelderman believed that Aaberg was under the influence of “something.”
[¶ 4.] Kelderman stopped Aaberg before he reached the entrance of the lounge. Kelderman asked Aaberg if he had been drinking or if he had a medical condition. Aaberg responded by stating that he had a prosthetic leg. He also stated that he had consumed “some beer” earlier that day. Kelderman required Aaberg to accompany him to his patrol car. Kelderman then called another officer for assistance in investigating whether Aaberg was under the influence of alcohol. No field sobriety tests were performed on account of Aa-berg’s disability and the icy conditions. At the conclusion of the investigation, Aaberg was arrested for driving under the influence of alcohol.
[¶ 5.] Aaberg was indicted on two counts of driving under the influence, second offense.[1] Prior to trial, Aaberg made a motion to suppress all evidence obtained as a result of the investigatory stop. A hearing was held before the magistrate court on April 7, 2005.
[¶ 6.] Kelderman and the officer who assisted him were the only individuals who testified at the hearing. The State argued that the totality of the circumstances gave Kelderman a reasonable belief that criminal activity was afoot. Aaberg, on the other hand, argued that it was unconstitutional to allow law enforcement to stop an individual simply because he was having difficulty walking on the ice.
[¶ 7.] The magistrate court ruled in favor of Aaberg and ordered the evidence suppressed. The court found that Kelder-man did not set forth specific, articulable *600 facts that provided reasonable suspicion to stop Aaberg. The State raises the following issue:
Whether Kelderraan had reasonable suspicion to stop Aaberg.[2]
Standard of Review
[¶ 8.] A motion to suppress based on an alleged violation of a constitutional right is reviewed de novo. State v. Kottman, 2005 SD 116, ¶ 9, 707 N.W.2d 114, 118 (citing State v. Hess, 2004 SD 60, ¶ 9, 680 N.W.2d 314, 319). The magistrate court receives no deference for legal conclusions. Id. The court’s factual determinations are reviewed under the clearly erroneous standard. State v. Mattson, 2005 SD 71, ¶ 14, 698 N.W.2d 538, 544-45 (citing State v. De La Rosa, 2003 SD 18, ¶ 5, 657 N.W.2d 683, 685). “Once the facts have been determined, however, the application of a legal standard to those facts” is fully reviewable by this Court. Id. (citing De La Rosa, 2003 SD 18, ¶ 5, 657 N.W.2d at 685).
Decision
[¶ 9.] The Fourth Amendment to the United States Constitution and Article VI, section 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures.[3] The United States Supreme Court has held that individuals are entitled to Fourth Amendment protection when engaging in common functions such as walking down a city street. Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968) (noting that the Fourth Amendment “right of personal security belongs as much to the citizens on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs”). Generally, probable cause must exist before law enforcement is permitted to seize an individual. Id. at 15-19, 88 S.Ct. at 1876-8, 20 L.Ed.2d 889. However, this Court and the United States Supreme Court has recognized “the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual’s personal security based on less than probable cause.” State v. Ballard, 2000 SD 134, ¶ 10, 617 N.W.2d 837, 840 (quoting United States v. Place, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). If an officer is to avail himself of the exception set forth in Terry, he must demonstrate that prior to seizing the suspect, he had reasonable suspicion that criminal activity may be afoot. Terry, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d 889.
[¶ 10.] Articulating a precise definition of reasonable suspicion is “not possible.” Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). Instead, the United States Supreme Court has described reasonable suspicion “as a particularized and objective basis for suspecting the person stopped of criminal activityf.]” Id. at 696, 116 S.Ct. at 1657,134 L.Ed.2d 911. Reasonable suspicion is a “common sense, nontechnical concep[t] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act.” Id. at 696, 116 *601 S.Ct. at 1657, 134 L.Ed.2d 911 (quoting Illinois v. Gates, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)) (additional citations omitted). The inquiry into whether reasonable suspicion exists is fact sensitive; each case is to be decided on its own facts and circumstances. Id. at 696,116 S.Ct. 1657,134 L.Ed.2d 911.
[¶ 11.] Reasonable suspicion is a less demanding standard than probable cause. Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). As this Court explained:
[w]hile the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon “specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion.”
Mattson, 2005 SD 71, ¶ 30, 698 N.W.2d at 548.
[¶ 12.] In the present case, the magistrate court found that Kelderman had failed to sufficiently articulate the facts on which he based his suspicion. As a result, the court held that Kelderman was acting on a mere whim or out of idle curiosity. In its findings of fact, the court found that Aaberg did not “weave, stumble, or fall down.” Additionally, the court concluded that Kelderman’s suspicion was based solely “on Mr. Aaberg’s difficulty exiting his vehicle and walking towards the establishment.” The court did not make any credibility determinations.
[¶ 13.]We do not find any of the court’s findings of fact clearly erroneous. However, Kelderman’s testimony set forth specific facts which taken together, supported an investigatory stop of Aaberg. Kelderman testified that Aaberg was walking far slower than a normal person would on similar conditions. Kelderman also observed Aa-berg having great difficulty keeping his balance. Most of Kelderman’s observations were articulated during the following exchange with defense counsel:
Q: Would you admit, sir, that as far as the explanation or a definition of the great difficulty in walking as you described it in your police report and in your grand jury testimony; would it be fair to say that his left leg would be sliding out away from him, and he’d have to hold his arms out to balance himself; would that be an accurate description?
A: Yes.
Q: So, you’d admit that he wasn’t stumbling, or staggering, or weaving, or anything like that; is that correct?
A: Staggering is a relative term. I’d say he probably was staggering a little bit to my estimation.
Q: But there was not stumbling, he didn’t fall down? Correct?
A: He came close to falling down, but he did not fall down.
Kelderman concluded that it was more than icy conditions and that Aaberg was under the influence of “something.” As mentioned, the magistrate court did not find Kelderman’s testimony to be incredible. Instead, the court based its ruling on Kelderman’s inability to state specific and articulable facts justifying his suspicion. The court did make a finding that Aaberg did not “weave, stumble, or fall down.” However, the court’s findings did not address Kelderman’s testimony that Aaberg staggered, held his arms out to keep his balance, came close to falling down, and walked slower than a normal person would under similar conditions.
[¶ 14.] The latter facts, coupled with the fact that Aaberg was walking into a bar during late evening hours, provide a specific and articulable basis by which a *602 reasonable police officer could suspect Aa-berg of being under the influence of alcohol. Thus, it was not unreasonable for Kelderman to conduct an investigatory stop of Aaberg in an effort to confirm or dispel the suspicions. We have the benefit of knowing now that some of Aaberg’s conduct was due to his disability. However, Kelderman did not know of the prosthesis at the time of the seizure and that is the relevant time in determining reasonableness.
[¶ 15.] Although this is a close case, we do not agree with the magistrate court that Kelderman acted on a mere whim, hunch, or out of idle curiosity. Kelderman presented specific and articulable facts which taken together with rational inferences from those facts, reasonably warranted the seizure.
[¶ 16.] Reversed.
[¶ 17.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.
[¶ 18.] ZINTER, Justice, concurs specially.
[¶ 19.] MEIERHENRY, Justice, dissents.

. Aaberg was indicted on violations of SDCL 32-23-1(1) and (2).

. Ordinarily, a direct appeal cannot be taken from magistrate court. See State v. Sckwaller, 2006 SD 30, 712 N.W.2d 869. However, a statutory exception exists in SDCL 23A-32-5 when the prosecution is appealing from orders suppressing evidence, orders requiring the return of seized property in a criminal case, or orders sustaining a motion to dismiss a complaint on statutory grounds or otherwise.

. The State does not argue nor dispute that Aaberg was “seized” within the meaning of the Fourth Amendment.