#24518-a-SLZ

**2008 SD 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

  v.

RYAN ELDON QUARTIER,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN A. SEVERSON
Judge

* * * *

LAWRENCE E. LONG
Attorney General

STEVEN R. BLAIR
Assistant Attorney General
Pierre, South Dakota                          Attorneys for plaintiff
                         and appellee.


STEVE COWAN
and
AARON SALBERG
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota                          Attorneys for defendant
                         and appellant.

* * * *

ARGUED MARCH 27, 2008

OPINION FILED **07/09/08**

#24518

ZINTER, Justice

[¶1.]        Ryan Eldon Quartier appeals the denial of his motion to suppress evidence obtained in an investigatory stop.  We affirm.

**I.**

[¶2.]        On a May evening in 2006, Sioux Falls narcotics officers were executing a search warrant to search Jose Navarro, his apartment, an unattached garage, and two vehicles.  Detective Michael Walsh had been investigating Navarro for approximately six months.  Walsh had substantial information that Navarro was distributing several pounds of crystal methamphetamine in the area.

[¶3.]        Walsh and fellow narcotics officers requested assistance from Sioux Falls police officers.  While waiting for Navarro's vehicles to arrive at the premises, Walsh observed a red van, which was not listed on the warrant, stop outside Navarro's residence around 8:00 p.m.  The van idled on the street in front of the apartment.  Walsh testified that the street was not "much of a through road," and traffic was minimal that time of night.  Walsh observed Navarro leave his apartment building and speak with the occupants of the van.  Walsh did not see any physical objects exchanged between Navarro and the occupants.  Approximately one half hour to an hour and a half[1] after the van left, however, it returned.  Although Walsh did not personally witness the van's second stop or visit[2] at the apartment,

---

1.    Quartier proposed a finding that it was one half hour.  *See infra*, n2.  The circuit court found it was an hour and a half.

2.    At oral argument before this Court, Quartier for the first time argued that the van's return was not a second "stop."  Rather, Quartier argued it was a mere "drive-by."  Quartier's questioning at the suppression hearing, his own

(continued . . .)

-1-

_____

(. . . continued)

proposed findings of fact, and his appellate briefing, however, reflect that neither Quartier nor the circuit court ever considered that the return of the van was a "drive-by" rather than a second stop or visit at Navarro's apartment.

For example, at the suppression hearing, Quartier's counsel's cross-examination reflects that at that time he believed the return involved a "second stop." Defense counsel asked Walsh:

Q:     What information did you have about **the** *second* **stop** of the van?
A:     I don't remember exactly. It either pulled into the driveway or pulled into the street. I don't recall if anybody got out or if anyone came out of the apartment building. The only thing that I recall for sure is that the second surveillance called up the license plate and I said, hey, that's been here earlier and as for specific details, I don't remember exactly what was said.

Although Quartier's counsel, in argument before this Court, suggested that this answer is ambiguous, Quartier did not pursue what he now contends is an important distinction. Counsel never asked Detective Walsh or Officer Garden further details about the return, such as whether it was a mere "drive-by."

More importantly, in the proceedings before the circuit court, Quartier apparently did not believe this was a mere drive-by (and did not preserve this appellate argument) because he proposed no such finding of fact. On the contrary, in Quartier's proposed findings of fact, he described both encounters at Navarro's residence the same: "two short visits." In Quartier's proposed finding of fact twelve, he proposed: "[b]ased upon [Walsh's] knowledge of Jose Navarro's drug activities and his belief that the nature of the red van's **two short visits** within about one-half hour indicated the probability that the van's occupants were engaged in drug purchases, Detective Walsh requested through a radio transmission that uniformed Officers conduct a stop of the red van **after it left 4500 E. 16th St. #204**." (Emphasis added.)

Thus, it is no surprise that, after hearing the evidence, the circuit court, found that the first and second encounters were the same. The court described them both as "short visits." Finding of Fact #5.

We finally note that Quartier has neither challenged this finding of historical fact on appeal nor raised the "drive-by" issue in his appellate briefing. In his brief, Quartier never described the second visit to Navarro's residence a

(continued . . .)

#24518

he received the information from other members of the surveillance team at the scene.

[¶4.]       Based upon the investigation of Navarro's drug activity, the van's two visits, and Navarro's discussion with the occupants, Walsh believed that he had reasonable suspicion to stop the van. He therefore requested (through radio transmission) that the assisting Sioux Falls police officers stop the van. Officer Jeff Garden complied.[3]

[¶5.]       Although Navarro was not in the van, Quartier was a passenger. Garden asked Quartier for identification, and Quartier produced a South Dakota driver's license. A check of Quartier's license revealed that it was suspended. Quartier was placed under arrest for possession of a suspended license. A search of Quartier incident to his arrest produced a glass pipe, which tested positive for methamphetamine.

[¶6.]       Quartier moved to suppress the evidence derived from the stop, asserting it was an unconstitutional search and seizure. Quartier argued that the

_____

(. . . continued)
"drive-by." In the State's appellate brief, however, it described the return of the van at Navarro's apartment as a second "stop," and Quartier filed no reply brief taking issue with the State's description. Under the foregoing circumstances, we decline to adopt Quartier's new argument of fact that has never been raised until oral argument before this Court.

3.    Officer Garden indicated that he believed Walsh told him the reason for the stop was that Navarro was inside the van. Walsh denied this was the reason he requested the stop, stating at no time did he think Navarro was in the van. This dispute is of no consequence because we ultimately agree with the circuit court's conclusion that Walsh had reasonable suspicion to stop the van.

-3-

van's two visits at Navarro's apartment did not constitute reasonable suspicion that criminal activity was afoot. The State argued that, under the totality of the circumstances, the two visits at the apartment under surveillance for current drug activity, together with the Navarro conversation on the first visit, created a reasonable suspicion for the stop. The State specifically relied on Walsh's observation that drug activity happens quickly, and sometimes, in two stages. The State also relied on Walsh's inference that, based upon his training and experience, the two visits together with the Navarro conversation created reasonable suspicion.

[¶7.]      Based on the totality of the evidence, including the officer's observation and inference, the circuit court concluded that Walsh had reasonable suspicion for the stop. The court further concluded that Walsh's reasonable suspicion was imputed to Garden, therefore justifying his stop of the van.[4]

[¶8.]      At the conclusion of a court trial, Quartier was found guilty of possession of a controlled substance in violation of SDCL 22-42-5 and possession of drug paraphernalia in violation of SDCL 22-42A-3. He was sentenced to five years in the state penitentiary, all of which was suspended. He now appeals.

---

4.    The State also argued that even if Walsh did not have reasonable suspicion, Garden was justified in stopping the van because he reasonably, although mistakenly, believed that Navarro – the subject of the search warrant – was inside the van. The circuit court agreed, concluding that Garden had an "objective, reasonable, and good faith belief that Navarro was in the van at the time of the stop, and therefore, the stop was valid." Because we ultimately conclude that Walsh had reasonable suspicion to stop the van, we do not address this issue.

**II.**

[¶9.]     Our standard of reviewing warrantless searches and seizures is

settled:

> [A]s a general matter determinations of reasonable suspicion . . . should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

State v. Hirning, 1999 SD 53, ¶9, 592 NW2d 600, 603. In this case, Quartier does

not contend that any of the circuit court's findings of fact are clearly erroneous.

Therefore, we review this matter de novo.

[¶10.]     We have noted that "[a]rticulating a precise definition of reasonable

suspicion is 'not possible.'" State v. Aaberg, 2006 SD 58, ¶10, 718 NW2d 598, 600

(citing Ornelas v. United States, 517 US 690, 695, 116 SCt 1657, 1661, 134 LEd2d

911 (1996)). Reasonable suspicion is a common-sense and non-technical concept

dealing with the practical considerations of everyday life. *Id*. Thus, "[w]hile the

stop may not be the product of mere whim, caprice or idle curiosity, it is enough that

the stop is based upon 'specific and articulable facts which taken together with

rational inferences from those facts, reasonably warrant [the] intrusion.'" State v.

Akuba, 2004 SD 94, ¶15, 686 NW2d 406, 413 (citation omitted). Once reasonable

suspicion arises, law enforcement may stop the vehicle to either confirm or discount

that suspicion. State v. Herrboldt, 1999 SD 55, ¶8, 593 NW2d 805, 808 (citing

Adams v. Williams, 407 US 143, 145-46, 92 SCt 1921, 1923, 32 LEd2d 612 (1972)).

[¶11.]     In finding that reasonable suspicion existed, the circuit court relied on

*United States v. Buchannon*, 878 F2d 1065 (8thCir 1989). In *Buchannon*, the stop

occurred after only one contact with a suspected drug dealer. That defendant arrived at a house under surveillance by police waiting for a warrant to search for drugs. The defendant entered the house and then left at the same time as the resident suspect under surveillance. The two drove off in separate cars heading in the same direction. The officers had not previously observed the defendant, although they knew the suspect. The Eighth Circuit held that this single connection to the suspected drug dealer established reasonable suspicion to stop the defendant's car. *Id.* at 1067. According to the court, the fact that the defendant visited the home of a suspected drug dealer and left simultaneously with him sufficiently connected the defendant with possible criminal activity. *Id.* The *Buchannon* court also noted, "[h]is visit to the house, carrying a bag and departing a short time later, conformed to the patterns of the drug trade." *Id.* Citing to *Buchannon's* comparable facts, the circuit court in today's case similarly found that the van's interaction with the suspected drug dealer, and especially the van's return to the residence, created reasonable suspicion.

[¶12.]		Quartier argues, however, that the facts of this case are more similar to *United States v. Crawford*, 891 F2d 680 (8thCir 1990), in which the court suppressed evidence resulting from a *Terry* stop. *Crawford* also involved police surveillance of an apartment building. One of the apartments belonged to a known cocaine trafficker. Police observed the defendant run past the front of the building and around to the back where he entered the rear door. Minutes later, the defendant emerged carrying a bicycle that he placed in a car. He then re-entered the building, and soon came out again carrying a bundle that appeared to be two

coats, which he also placed in the car. Defendant got into the car, drove away, and was stopped by the police. When the police officer asked defendant for his driver's license, defendant could not produce one. The officer informed defendant he was under arrest, searched the vehicle, and uncovered a bag containing cocaine and cash.

[¶13.]     The *Crawford* court held that the officer did not have reasonable suspicion to stop the car, stating, "[m]erely entering and leaving a multi-unit apartment complex where a known drug trafficker resides is not an objectively suspicious fact absent some link to the trafficker." *Id*. at 683. As the court further observed, it could not be determined whether the defendant entered the suspect drug dealer's apartment. Because there was no connection between the suspected drug dealer and the defendant, and because the defendant did nothing "that might link him to the suspect," the Eighth Circuit suppressed. *Id*. at 682.

[¶14.]     Although reaching different results under different facts, *Crawford* and *Buchannon* are informative because they both illustrate the same central point: some "link" or "connection" between a defendant and the suspected drug dealer is necessary to establish reasonable suspicion. *Crawford,* 891 F2d at 682; *Buchannon,* 878 F2d at 1068 (Fagg, J., dissenting). In this case, unlike *Crawford* but similar to *Buchannon*, there was a direct link and connection: two visits to a known drug suspect's residence, including a conversation between the drug trafficker and the occupants of the van. Further, the van's return to Navarro's residence within a

-7-

short timeframe led a trained narcotics officer to believe that the visits were indicative of drug activity.[5]

[¶15.] Like the defendant in *Crawford*, Quartier offers an alternative explanation for one of the van's visits, an explanation lending itself to potential innocent conduct. Quartier postulates that the van's first stop could have been innocent if "the driver of the van was lost and imposed on Navarro, who was standing outside his apartment, for directions to an address in the area." Appellant's Brief, p17. Quartier then argues that "Detective Walsh did not see suspicious activity sufficient to overcome [this] innocent explanation[.]" *Id*. p20. We rejected this type of individual factor/innocent conduct analysis in *State v. Kenyon*, holding that an officer is not required to consider and discard possible innocent explanations before he or she can reach a determination that reasonable suspicion exists. 2002 SD 111, ¶18, 651 NW2d 269, 274. We noted that although innocent explanations may exist, "[a]n officer 'need not rule out the possibility of innocent conduct.'" *Id*. (citing United States v. Arvizu, 534 US 266, 276-77, 122 SCt 744, 753, 151 LEd2d 740 (2002)). *Arvizu* clarified that courts should not examine innocent explanations for the reasonable suspicion factors standing alone,

---

5.    At the suppression hearing, Quartier's counsel asked Walsh:

    Q: Was the fact that the van was there on more than one occasion significant?
    A: Yes, sir.
    Q: Why would that be significant?
    A: Well, it's a – drug dealers and users will often make more than one short-term stop, especially if they are selling. In my experience, often drug dealers will purchase an amount of narcotics, go and sell it, go back and get more and sell it, and, essentially, that is how the money is made.

a process which the Supreme Court described as a "divide-and-conquer" analysis. 534 US at 274, 122 SCt at 751, 151 LEd2d 740.

[¶16.]     Instead, the appropriate analysis requires an examination of the "totality of the circumstances" to see whether the officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Kenyon,* 2002 SD 111, ¶15, 651 NW2d at 273. The totality of the circumstances need only support a "commonsense inference" that criminal activity is occurring. *Id.* ¶18, 651 NW2d at 274. "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* ¶15, 651 NW2d at 273-74 (citing *Arvizu,* 534 US at 273, 122 SCt at 750-51, 151 LEd2d 740).

[¶17.]     In this case Walsh testified that based upon his training and experience, the cumulative information led him to the suspicion of drug activity: "the fact that [the van] showed up a second time . . . is what sparked the interest in the van *and* because of my experience and training *and* seeing . . . the short-term traffic and repeat traffic at a certain house *and* making contact with a certain person." The circuit court, as the fact finder, considered Quartier's arguments, but rejected them in favor of Walsh's inference.

[¶18.]     We see no reason to overrule this determination because, although "as a general matter determinations of reasonable suspicion . . . are reviewed *de novo* on appeal," a reviewing court "should take care . . . to give due weight to inferences drawn from [historical] facts by resident judges and local law enforcement officers." *Ornelas*, 517 US at 699, 116 SCt at 1663, 134 LEd2d 911.

> A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his [or her] police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference.

*Id.* *See also Arvizu*, 534 US at 273-74, 122 SCt at 751, 151 LEd2d 740 (noting that a "reviewing court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers") (citing *Ornelas, supra*); United States v. Reinholz, 245 F3d 765, 773 (8thCir 2001) (providing, "[w]e review the trial court's findings of fact for clear error and we give deference to the inferences drawn from those facts by law enforcement officers, the court that issued the search warrants, and the trial court") (citing *Ornelas, supra*).

[¶19.]     Giving due weight to the circuit court's historical findings and to Walsh's inferences, there is sufficient evidence to conclude that there was reasonable suspicion to stop the van. The police were conducting a surveillance of Navarro's residence after a lengthy investigation had convinced a judge that probable cause existed to search the residence, garage, Navarro and his vehicles for ongoing drug distribution. Based upon the initial stop of the van at Navarro's residence, the conversation between the occupants of the van and Navarro, the knowledge that Navarro was a large methamphetamine distributor, and the van's return visit a short time later, there was a sufficient connection between Navarro and the van providing Walsh the reasonable suspicion necessary to perform an investigatory stop. Once Walsh reached that conclusion based on the totality of the circumstances, he was not required to consider and discard individual, possible innocent explanations for each of the van's visits. He was entitled to ask Officer

Garden to stop the vehicle to either confirm or discount the suspicion. *Herrboldt*, 1999 SD 55, ¶8, 593 NW2d at 808. Thus, we hold that the circuit court did not err in denying Quartier's motion to suppress.

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.