#25391-a-DG

**2010 SD 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                                   Plaintiff and Appellee,

v.

ALVIN R. SOUND SLEEPER,                               Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

KIRSTEN JASPER
CRAIG M. EICHSTADT
Assistant Attorneys General
Pierre, South Dakota                                     Attorneys for plaintiff
                                                        and appellee.


PAUL PIETZ
Pennington County Public
 Defender's Office
Rapid City, South Dakota                                Attorneys for defendant
                                                        and appellant.

\* \* \* \*

ARGUED MARCH 22, 2010

OPINION FILED **08/18/10**

#25391

GILBERTSON, Chief Justice

[¶1.]        Sound Sleeper appeals the circuit court's denial of his motion to suppress evidence.  We affirm.

**FACTS**

[¶2.]        On January 29, 2009, at 1:30 p.m., Rapid City Police Department Detective Kelvin Masur was in the parking lot of an Exxon gas station on 634 East North Street investigating a beer theft complaint.  Masur took note of a man leaving the gas station carrying a case of beer and a brown bag containing what Masur believed to be a large bottle of beer.  The man, eventually identified as Tony Hutchinson, got into the passenger side, front seat of a waiting vehicle.  At least two other men were in the vehicle, the driver, Sound Sleeper, and another passenger.

[¶3.]        According to Masur's testimony, once the man was seated in the vehicle, Hutchinson took the bottle from the brown bag and held it up in the air as if to show it to the occupants of the vehicle.  Hutchinson grasped the top of the bottle with one hand over the top of the cap and with the other hand he held the base of the bottle.  As he brought the bottle down out of Masur's sight, Hutchinson made a motion that appeared to Masur as though he had opened the bottle.  Masur was concerned that what he had observed was a violation of SDCL 35-1-9.1, South Dakota's open container law.[*]

---

[*]        SDCL 35-1-9.1 provides:

> It is a Class 2 misdemeanor for any person occupying a motor vehicle located upon a public highway or the right-of-way of a public highway to consume any alcoholic beverage or have a package or any receptacle containing an alcoholic beverage in

(continued . . .)

-1-

[¶4.] Masur observed the vehicle exit the parking lot. He followed in his unmarked gold Dodge Stratus, which was not equipped with either a siren or roof top lights. Masur did not engage the red and blue lights on the unmarked car's visor or attempt to stop the vehicle. Instead, he called dispatch for a marked patrol car to conduct a stop of the vehicle. However, before the patrol car could be dispatched, the vehicle pulled into another parking lot after traveling approximately two blocks and came to a stop. Masur did not observe the driver commit any traffic violations while following the vehicle.

[¶5.] Masur pulled into the lot and parked behind the vehicle. He later testified he was unsure whether there was enough room for the other vehicle to back out and drive off. Masur, in plain clothing, exited his unmarked car, approached the driver's side window, and identified himself as a police officer. Masur's purpose for approaching the vehicle was to follow-up on his observations of Hutchinson's conduct at the Exxon gas station.

[¶6.] Masur initially asked the driver, Sound Sleeper, for his driver's license before asking any questions regarding the bottle of beer and whether it was open. Sound Sleeper provided Masur with a South Dakota identification card rather than a driver's license. Masur informed Sound Sleeper and the occupants of

_____

(. . . continued)

> *that person's possession* unless the seal of the original package remains unbroken or the alcoholic beverage is so removed from the passenger area of the motor vehicle that no occupant of the motor vehicle has access to it.

(Emphasis added).

the reason for approaching the vehicle. Hutchinson then held up the bottle, which contained beer, and showed Masur that it was still sealed and had never been opened.

[¶7.] As the conversation continued, Masur determined that Sound Sleeper's driver's license was under suspension. Masur continued investigating once he realized that Sound Sleeper was driving without a valid license. After engaging Sound Sleeper in further conversation, Masur also noted Sound Sleeper's eyes were glassy and that his breath smelled of alcohol. Sound Sleeper was arrested for driving under the influence after failing field sobriety tests. A subsequent blood test showed his blood alcohol content by weight was .123.

[¶8.] Sound Sleeper moved to suppress all evidence seized as a result of the stop, contending it was obtained in violation of the Fourth Amendment. Sound Sleeper argued Masur did not have reasonable suspicion to approach the vehicle and conduct an investigation concerning the open container. He further contended that once the vehicle came to a stop Masur should have questioned Hutchinson, the person Masur observed holding the beer, and not Sound Sleeper as the driver of the vehicle.

[¶9.] The circuit court made its ruling on the record after the close of arguments:

> The officer demonstrated, you pretty much had to see it, that he's sitting in front of a liquor store. A gentleman comes out with a brown paper bag. It's reasonably articulable suspicion it's got alcohol in it. And then he sees it held up in a vehicle in a manner that it appeared that the cap was about to be twisted off.

> It went out of sight, and the officer was evidently fairly certain that he took the cap off, which would make it an open container in the vehicle, in violation of state law.
>
> That he followed up on that. And in following up on that, he approached the parked vehicle. He did not pull it over. He approached the parked vehicle. He asked for identification from the driver. He did not have identification. Well, he did. That's all he had. He didn't have a valid driver's license.

The circuit court denied Sound Sleeper's motion from the bench.

[¶10.]    Sound Sleeper's objections to the State's proposed findings of fact and conclusions of law were denied. No definitive finding of fact or conclusion of law was entered as to whether Sound Sleeper was seized within the meaning of the Fourth Amendment, although the circuit court's conclusion of law was that Masur had reasonable and articulable suspicion that a crime was being committed.

[¶11.]    Sound Sleeper was convicted after a bench trial at which time he also admitted to a part two Information alleging two prior DUI convictions. He was sentenced to two years in the South Dakota State Penitentiary. Sound Sleeper appeals, raising the following issues:

> 1.    Whether the officer had reasonable suspicion to approach the occupants of the vehicle to investigate an open container violation.
>
> 2.    Whether the officer had reasonable suspicion to seize and question Sound Sleeper, the driver of the vehicle, when it was the passenger the officer observed with the beer bottle.

### STANDARD OF REVIEW

[¶12.]    "This Court reviews the denial of a motion to suppress alleging a violation of a constitutionally protected right as a question of law by applying the de novo standard." State v. Ludemann, 2010 SD 9, ¶14, 778 NW2d 618, 622 (quoting State v. Madsen, 2009 SD 5, ¶11, 760 NW2d 370, 374). However, we review the

circuit court's findings of fact under the clearly erroneous standard without deference to its conclusions of law. *Id.* (citing State v. Haar, 2009 SD 79, ¶12, 772 NW2d 157, 162). Furthermore,

> This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.

*In re* H.L.S., 2009 SD 92, ¶11, 774 NW2d 803, 807-8 (quoting State v. Baysinger, 470 NW2d 840, 843 (SD 1991)) (internal citations omitted).

## ANALYSIS AND DECISION

[¶13.] **1. Whether the officer had reasonable suspicion to approach the occupants of the vehicle to investigate an open container violation.**

[¶14.] Sound Sleeper argues that he was seized within the meaning of the Fourth Amendment without reasonable suspicion. He further argues that reasonable suspicion existed only as to Hutchinson and that Masur did not employ the least intrusive means to dispel or confirm his suspicions as to Hutchinson. Sound Sleeper also argues that Masur should have approached the passenger side of the car and once he saw the container was closed, Masur should have concluded the seizure. Further error, Sound Sleeper argues, occurred when Masur asked Sound Sleeper as the driver of the vehicle for his license. The State argues that Masur had reasonable suspicion to stop the car. It further argues that it was reasonable for Masur to approach Sound Sleeper as the driver and ask for his license under our traffic stop case law.

-5-

### *The Seizure of the Driver and Passengers*

[¶15.] The Fourth Amendment's prohibition against unreasonable searches and seizures "requires generally the issuance of a warrant by a neutral judicial officer based on probable cause prior to the execution of a search or seizure of a person." *Id.* ¶14, 772 NW2d at 808 (quoting State v. Mattson, 2005 SD 71, ¶29, 698 NW2d 538, 548). Law enforcement may, however, perform an "investigative detention" rather than a full-blown custodial arrest based on reasonable suspicion. State v. DeLaRosa, 2003 SD 18, ¶7, 657 NW2d 683, 685-86 (citing Terry v. Ohio, 392 US 1, 30, 88 SCt 1868, 1884-85, 20 LEd2d 889 (1968)). An officer may stop a vehicle to either confirm or dispel the suspicion once the reasonable suspicion standard has been satisfied. State v. Quartier, 2008 SD 62, ¶10, 753 NW2d 885, 888 (citing State v. Herrboldt, 1999 SD 55, ¶8, 593 NW2d 805, 808).

[¶16.] As we have noted on prior occasions, "articulating a precise definition of reasonable suspicion is 'not possible.'" *Id.* (quoting State v. Aaberg, 2006 SD 58, ¶10, 718 NW2d 598, 600). We use a common-sense and non-technical approach to determining reasonable suspicion, one that deals with the practical considerations of everyday life. *Id.* However, a "stop may not be the product of mere whim, caprice or idle curiosity." *Id.* (quoting State v. Akuba, 2004 SD 94, ¶15, 686 NW2d 406, 413). Reasonable suspicion is satisfied when the stop is based upon "'specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Id.* (quoting *Akuba,* 2004 SD 94, ¶15, 686 NW2d at 413).

[¶17.] We also employ a "totality of the circumstances approach" in order to determine whether the officer had a "particularized and objective basis" for suspecting criminal activity. *Haar*, 2009 SD 79, ¶23, 772 NW2d 157, 167 (quoting United States v. Arvizu, 534 US 266, 273, 122 SCt 744, 750-51, 151 LEd2d 740 (2002)). The detaining officers may "draw on their experience and specialized training in making inferences from and deductions about the cumulative information available to them that 'might elude an untrained person.'" *Id.* (quoting *Arvizu*, 534 US at 273, 122 SCt at 750-51, 151 LEd2d 740). We do not employ a "divide-and-conquer" approach where innocent explanations for the reasonable suspicion factors are examined standing alone. *Id.* (quoting *Quartier*, 2008 SD 62, ¶15, 753 NW2d at 889). "The totality of the circumstances need only support a 'commonsense inference' that criminal activity is occurring." *Quartier*, 2008 SD 62, ¶16, 753 NW2d at 889 (quoting State v. Kenyon, 2002 SD 111, ¶18, 651 NW2d 269, 274).

[¶18.] Masur witnessed what he believed to be a violation of SDCL 35-1-9.1. Masur did not use the red and blue lights on the unmarked car's visor or attempt to stop the vehicle. Instead, he approached the vehicle once it came to a stop. Upon approaching the parked vehicle and identifying himself as a police officer, an investigatory stop occurred as Sound Sleeper and the passengers submitted to his authority by remaining in the car and engaging and responding to Masur's questions. Based on the reasonable suspicion that Hutchinson had an open container of beer in the front seat of the car, Masur legally detained the car and all its occupants, driver and passengers, in order to briefly investigate the matter.

*The Investigatory Stop*

[¶19.]    "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  State v. Hayen, 2008 SD 41, ¶7, 751 NW2d 306, 309 (quoting State v. Ballard, 2000 SD 134, ¶11, 617 NW2d 837, 841).  "[T]he investigative methods employed should be the *least intrusive means* reasonably available to *verify or dispel* the officer's suspicion in a short period of time."  *Id*.  The investigative method must also "be 'reasonably related in scope to the circumstances that justified the interference in the first place.'"  *Id*.  "A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties."  State v. Krebs, 504 NW2d 580, 585 (SD 1993) (quoting State v. Burkman, 281 NW2d 436, 439 (SD 1979)).  "All questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification for the stop *or* are supported by reasonable suspicion."  State v. Funderburg, 2008-NMSC-026, ¶14, 144 NM 37, 183 P3d 922 927 (quoting State v. Urioste, 2002-NMSC-023, ¶6, 132 NM 592, 52 P3d 964, 967).

[¶20.]    Masur approached the driver's side of the vehicle to initiate the investigative stop.  We do not take issue with what side of a vehicle an officer chooses to approach.  Instead, the officer must be able to use his judgment to determine the safest manner in which to approach a stopped vehicle.  "The risk of harm to both the police and occupants is minimized if the officers routinely exercise unquestioned command of the situation."  Brendlin v. California, 551 US 249, 258,

127 SCt 2400, 2407, 168 LEd2d 132 (2007) (quoting Maryland v. Wilson, 519 US 408, 414, 117 SCt 882, 886, 137 LEd2d 41 (1997)).

[¶21.]    Guidance is furnished by *State v. Hanson.* 1999 SD 9, 588 NW2d 885. In *Hanson* we held that probable cause existed for the arrest of Hanson for possession of marijuana while she was a passenger in the front seat of a car. *Id.* ¶¶2, 16, 588 NW2d at 888, 890. The contraband was found in the back seat of the car. *Id.* ¶5, 588 NW2d at 888. Based on the totality of the factual circumstances in that case, we affirmed the trial court. *Id.* ¶16, 588 NW2d at 890. We did so noting that more had been shown than mere proximity to the contraband which by itself was insufficient to uphold the arrest as access to the rear seat was available to Hansen. *Id.* ¶15, 588 NW2d at 890.

[¶22.]    *State v. Patterson* anchors the other end of the spectrum by showing when reasonable suspicion about one passenger is not enough to raise individualized reasonable suspicion about another passenger. 2006-NMCA-037, ¶28, 139 NM 322, 131 P3d 1286, 1293 (NM App). In *Patterson,* the New Mexico Court of Appeals considered whether the observation of an open container of beer on the floor board of the back seat of a car was sufficient to raise individualized reasonable suspicion that a front seat passenger possessed "on his person" an open container of alcohol. *Id.* That court noted that the arresting officer did not observe Patterson with an open container, or an open container in the area near Patterson. *Id.* Under those circumstances, that court held that no facts were articulated by the officer beyond Patterson's mere presence in the car. *Id.* Mere presence in the car

without more is insufficient to create individualized suspicion that a person is violating the open container law. *Id.*

[¶23.] In the case at bar, based on his personal observations, Masur had two choices: either follow up and check on a possible violation of the open container law or simply walk away and ignore it. Based on his experience as a police officer, he chose to investigate. What Masur believed to be an open container was viewed by him in the front passenger seat and next to Sound Sleeper as the driver. Masur further testified that the sole purpose in approaching the vehicle was his belief that Hutchinson had opened the bottle of beer in the vehicle in violation of SDCL 35-1-9.1. After following the car for two blocks and pulling into a parking lot behind the vehicle, Masur no longer had a visual on the beer bottle. Unlike the facts in *Patterson*, the bottle when spotted by Masur was easily within the reach of the driver and created reasonable suspicion that Sound Sleeper may also have been in possession of an open container or possibly drinking and driving. Masur approached the driver of the vehicle to confirm or dispel his reasonable belief that there was an open container of beer in the car, and if open, who was in possession of it. Furthermore, the driver, as the person in control of the car, was the logical person with whom to begin the inquiry into whether an open container of beer was located inside the car.

[¶24.] Moreover, we are not dealing here with probable cause, which must be particularized as to each party *arrested*, which was the standard met in *State v. Hanson*. Nor are we dealing with a mere "'inchoate and unparticularized suspicion or hunch' that criminal activity may be afoot." *See Terry*, 392 US at 27, 88 SCt at

1883, 20 LEd2d 889. Instead, we are dealing with reasonable suspicion that the front seat passenger had opened the beer bottle and that an open container of alcohol was in the vehicle's front seat within reach of the driver where he could possibly possess it. A violation of the statute occurs by mere possession of the open container. *See* SDCL 35-1-9.1. Consumption is not required.

[¶25.]    After approaching the vehicle in order to dispel or confirm the reasonable suspicion that an open container of beer was in the front of the vehicle, Masur asked Sound Sleeper for his driver's license in order to ascertain his name and whether contraband, in this case an open container of beer, was present in the car. After Sound Sleeper handed over his South Dakota identification card, reasonable suspicion arose that Sound Sleeper was driving without a valid license in his possession and might not even legally have one. It was after Masur engaged Sound Sleeper in further conversation that Masur began to suspect Sound Sleeper had been drinking. As such, reasonable suspicion regarding Sound Sleeper's lack of a driver's license and intoxication developed during the investigative detention of the potential violation of South Dakota's open container law in SDCL 35-1-9.1. On the other hand, had Sound Sleeper produced a valid driver's license and had no odor of alcoholic beverage on his breath, once the officer had ascertained the beer had not been opened, the car and its occupants would have been entitled to leave.

[¶26.]    Affirmed.

[¶27.]    KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.