KERN, Justice
(dissenting).
[¶23.] I respectfully dissent. Upon examination of the totality of the circumstances, it is apparent that Deputy Kriese was not acting on an “inarticulate hunch,” but rather a “particularized and objective” basis providing reasonable suspicion to stop Stanage. Debough, the supervisor from Hardee’s, reported that his employee working at the drive-through window was delaying a driver he believed to be drunk. The manager remained on the line with dispatch until law enforcement told him to release the driver because Deputy Kriese had reported he was at the location. When viewing the evidence from Deputy Kriese’s perspective, the tip was contemporaneous and reliable, and the unique circumstance of a drive-through interaction renders the tip sufficient to warrant the stop.
[¶24.] It is well established that officers may perform a brief investigative stop based on reasonable suspicion. As attempting to articulate an exact definition of reasonable suspicion is “not possible,” we use a “common-sense and non-technical approach” that accounts for “the practical considerations of everyday life.” State v. Sound Sleeper, 2010 S.D. 71, ¶ 16, 787 N.W.2d 787, 791. “The factual basis needed to support an officer’s reasonable suspicion is minimal.” State v. Satter, 2009 S.D. 35, ¶ 6, 766 N.W.2d 153, 155. “All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.” State v. Scholl, 2004 S.D. 85, ¶ 6, 684 N.W.2d 83, 85. The stop must simply be based upon “specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant” a brief investigative detention. Id. In determining whether reasonable suspicion exists, a court must “take[] into account ‘the totality of the circumstances—the whole picture.’” Navarette v. California, — U.S. -, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[1125.] The majority, citing Navarette, contends that Deputy Kriese lacked reasonable suspicion because he relied upon a “merely ... conclusory allegation of drunk or reckless driving.” Supra ¶ 13. In Na-varette, the United States Supreme Court upheld an officer’s stop of a motorist that was based on an anonymous caller’s report that a vehicle drove her off the road. — U.S. -, 134 S.Ct. at 1686. In that case, the report included “more than a minor traffic infraction and more than a concluso-ry allegation of drunk or reckless driving.” Id. at -, 134 S.Ct. at 1691. From this language, the majority concludes that— without more than a conclusory allegation—“the present case falls short of reasonable suspicion.” Supra ¶ 13.
[¶26.] But the particular circumstances of Navarette distinguish it from the present facts. As the majority agrees, the tipster in Navarette was an anonymous-but-identifiable caller. The United States Supreme Court noted that the 911 emergency system used by the tipster “has some features that allow for identifying and tracing callers, and thus provides some safeguards against making false reports *532 with immunity.” Id. at -, 134 S.Ct. at 1689 (emphasis added). Thus, given “technological and regulatory developments,” the United States Supreme Court noted that “a reasonable officer could conclude that a false tipster would think twice before using such a system.” Id. at -, 134 S.Ct. at1690. Here, however, although dispatch did not convey to Deputy Kriese Debough’s identity or the identity of the employee at the drive-through window, a reasonable officer under the circumstances could conclude that their identities were known to law enforcement. Moreover, De-bough and his staff members were available and could be held immediately accountable if they gave false information— indeed, much more readily than tracking down an unidentified-but-potentially-identifiable caller to 911.[9]
[¶27.] The United States Supreme Court in Navarette then examined whether the conduct alleged suggested that the driver was intoxicated. Id. at -, 134 S.Ct. at 1690. In cases where a motorist alleges that another vehicle is being driven by an intoxicated driver, such behavior may very well “be explained by, for example ... an unruly child or other distraction.” Id. at -, 134 S.Ct. at 1691. Moreover, “not all traffic infractions imply intoxication.” Id. at -, 134 S.Ct. at 1690. It would be patently unreasonable for officers to stop every vehicle accused—even if fully believed—of some instance of erratic driving. Thus, the allegations must “create[] reasonable suspicion that ‘criminal activity may be afoot.’ ” Id. (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1885, 20 L.Ed.2d 889 (1968)). The United States Supreme Court highlighted the critical fact that the conduct bore “too great a resemblance to paradigmatic manifestations of drunk driving [that could not] be dismissed as an isolated example of recklessness.” Id. at -, 134 S.Ct. at 1691. But this does not mean that only manifestations of drunk driving contained within the report made in Navarette will satisfy the criteria for reasonable suspicion. “[T]here is more than one way to demonstrate ‘a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” Id. at -, 134 S.Ct. at 1692 (quoting Cortez, 449 U.S. at 417-418, 101 S.Ct. at 695).
[¶28.] Here, the majority faults Debough for not conveying the cashier’s observations of the driver’s slurred speech, bloodshot eyes, and lack of motor control to dispatch, and in turn to Deputy Kriese. When analyzing the information received in a tip, we have said that a “tip’s degree of reliability depends on the quantity and quality of the tipster’s information.” State v. Burkett, 2014 S.D. 38, ¶ 47, 849 N.W.2d 624, 636. And we have said that “[i]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion that would be required if the tip were more reliable.” Id. Thus, when a tip is particularly reliable, less information is needed.[10] See Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). In terms of reliability, firsthand observations entitle a tip “greater weight than might otherwise be the case.” Navarette, — U.S. -, 134 S.Ct. at 1689 (quoting Spinelli v. United States, 393 U.S. 410, *533 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). An anonymous tip—if sufficiently reliable—may alone provide reasonable suspicion to justify a stop. State v. Lownes, 499 N.W.2d 896, 899 (S.D. 1993) (anonymous tip detailing the vehicle and route taken by an allegedly intoxicated motorcyclist held sufficiently predictive to justify a Terry stop); see also White, 496 U.S. 325, 332, 110 S.Ct. at 2417 (anonymous tip with sufficient indicia of reliability may justify investigative stop).
[¶29.] So what information did Deputy Kriese have from which to form reasonable suspicion, which is a minimal standard lower than probable cause? The recording of the call to dispatch reveals that Debough told law enforcement that “my cashier” says we have “a drunk driver at [the] window.” Debough gave dispatch the license plate number of the vehicle and told dispatch that they were “holding [Stanage] right now.” Debough can be heard conversing back and forth with employees. Dispatch asked Debough to stay on the line as dispatch relayed the information to all officers in the area. Deputy Kriese responded and asked, “What was that traffic stop at Hardee’s?” Deputy Kriese also indicated that he was “a block away.” Dispatch informed Deputy Kriese that there was a “signal 8 [suspected drunk driver] at Hardee’s, [and] they are holding him at the window.” At this point, Deputy Kriese told dispatch to “tell [De-bough, who was still holding for dispatch] to turn them loose,” as Deputy Kriese was in the immediate vicinity. Dispatch relayed this information to Debough. Deputy Kriese observed a vehicle pull away from the Hardee’s drive-through window and, before performing the stop, confirmed the license plate number given to him by dispatch.
[¶30.] Even though Deputy Kriese was unaware that Debough himself did not observe the suspicious behavior by the individual driving the car, he could make certain “commonsense inference^.]” Sound Sleeper, 2010 S.D. 71, ¶ 17, 787 N.W.2d at 792. From the location of the report—a fast-food, drive-through window—Deputy Kriese could conclude that the cashier had the opportunity and proximity to form firsthand conclusions. Debough could reasonably infer that the cashier was actively engaged in verbal communications with the driver, first at the ordering stage via speaker and then in a hand-to-hand exchange of payment for food or beverages at the window. This routine transaction would allow an employee to assess the driver’s rate and clarity of speech, his facial expressions, his mannerisms, and his motor skills. And in this case, the observations were so significant that the employees chose to call law enforcement and delay the driver until an officer could respond. Additionally, the tip was made in the early morning hours on a Sunday around 2:00 a.m., which supports the inference of drunk driving. See Scholl, 2004 S.D. 85, ¶ 14, 684 N.W.2d at 88 (location where observation of intoxication was made affected the likelihood that alcohol was consumed and thus of intoxicated driving); People v. Barbarich, 291 Mich. App. 468, 807 N.W.2d 56, 63 (2011) (circumstances such as the fact it was Saint Patrick’s Day and that a large party was held nearby supported stop of a motorist alleged to have “almost hit” another car).
[¶31.] Detaining a customer at a drive-through window is highly unusual, and going to such lengths to hold a suspect lends credence to the belief that “criminal activity may be afoot.” Navarette, — U.S. -, 134 S.Ct. at 1690 (quoting Terry, 392 U.S. at 30, 88 S.Ct. at 1885). Further, the fact that the tipster’s employee was actively engaging with the suspect during the call to dispatch (i.e., the tip was made contemporaneous to the illegal conduct) *534 adds additional support to the tip’s reliability, reducing the need for additional information. See Navarette, — U.S. -, 134 S.Ct. at 1689-90. Deputy Kriese’s investigatory stop was the direct result of this call for assistance and cannot be said to have been made on the basis of “mere whim, caprice, or idle curiosity.” Scholl, 2004 S.D. 85, ¶ 6, 684 N.W.2d at 85.
[¶32.] The majority, citing State v. Mohr, 2013 S.D. 94, 841 N.W.2d 440, distinguishes the present case from one involving an emergency call concerning a robbery suspect, where the circumstances limited the ability of officers to investigate further before deciding whether to stop a suspect. Supra ¶ 17. However, the operation of a vehicle by an intoxicated driver also creates both an emergency and exigent circumstances. “An erratic and possibly drunk driver poses an imminent threat to public safety.” United States v. Wheat, 278 F.3d 722, 736 (8th Cir. 2001).
[WJhere an anonymous tip alleges ... [a] possibly drunk driv[er], a responding officer faces a stark choice.... [H]e can intercept the vehicle immediately and ascertain whether its driver is operating under the influence of drugs or alcohol. Or he can follow and observe, with three possible outcomes: the suspect drives without incident for several miles; the suspect drifts harmlessly onto the shoulder, providing corroboration of the tip and probable cause for an arrest; or the suspect veers into oncoming traffic, or fails to stop at a light, or otherwise causes a sudden and potentially devastating accident.
Id. at 736-37. Such circumstances certainly “limit[ ] the ability of the officers to investigate.” State v. Walter, 2015 S.D. 37, ¶ 12, 864 N.W.2d 779, 785 (discussing Mohr, 2013 S.D. 94, ¶¶ 18-23, 841 N.W.2d at 445-47). “Certainly more facts could have strengthened the officer’s suspicion, but in cases involving tips of erratic driving of a motor vehicle, fewer facts are necessary to justify an investigative stop.” Barbarich, 807 N.W.2d at 63.
[¶33.] As we have previously noted, in the absence of probable cause, “Terry recognizes that it may be the essence of good police work to adopt an intermediate response.” Mohr, 2013 S.D. 94, ¶ 24, 841 N.W.2d at 447. Waiting “to personally observe [a] defendant engage in dangerous and erratic driving” goes beyond the minimally necessary “reasonable, articulable suspicion and become[s] probable cause to seize defendant and issue an appropriate citation.” Barbarich, 807 N.W.2d at 63-64. “A brief stop of a suspicious individual, in order to determine his identity and maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.” Id.
[¶34.] Citing Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the majority concludes there is no “public-safety exception” to the Fourth Amendment. Supra ¶ 17 n.7. While there is no per se exception, it is well established that an “exigency can in some circumstances supplement the reliability of an informant’s tip in order to form the basis for an investigative stop.” State v. Rutzinski, 241 Wis.2d 729, 623 N.W.2d 516, 524 (2001) (citing City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 455, 148 L.Ed.2d 333 (2000) for the proposition that the “exigencies of some scenarios likely would outweigh the individual’s right to be free from an investigative traffic stop[.]”). Further, J.L. is readily distinguishable from this case. In J.L., an anonymous caller made an unrecorded call to police from an unknown location reporting that “a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.” 529 U.S. at 268, 120 S.Ct. *535 at 1377. Officers stopped J.L. and found him in possession of a gun. J.L.’s motion to suppress the stop was denied and he was convicted. Upon review, the United States Supreme Court held that because the informant was anonymous, the tip must bear at least “moderate indicia of reliability” such as that “present in White.” Id. at 271, 120 S.Ct. at 1379. Finding that “[a]ll police had to go on ... was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L.,” id. the Court concluded that the stop was unconstitutional. While the Court declined to adopt a “firearm exception” to standard Temj requirements despite “the serious threat that armed criminals pose to public safety,” id. at 272, 120 S.Ct. at 1379, it nonetheless indicated that the danger alleged by a tip is a factor in the analysis, such that “a report of a person carrying a bomb [might not] need bear the indicia of reliability we demand for a report of a person carrying a firearm....” Id. at 273-74, 120 S.Ct. at 1380.
[¶35.] Other courts have examined the sufficiency of tips resulting in investigatory stops by examining the competing principles of public safety and the protections of the Fourth Amendment. The Kansas Court of Appeals in State v. Tucker, 19 Kan.App.2d 920, 878 P.2d 855, 858 (1994) considered a case involving an anonymous tip of erratic driving in which the caller provided the type of vehicle and location of travel. Officers located and stopped the car without first making observations of erratic driving. As the court aptly noted, cases of this nature involve
the ever-changing equation used to balance the rights of an individual to be free from unwarranted intrusions of his or her freedom of movement and right to privacy with the right of the public to be protected from unreasonable danger. This equation and the balance change with the facts presented. The risk to the public in this case was not that an illegal drug or a concealed weapon might go undetected. This risk here was a drunk driver maneuvering a thousand pounds of steel, glass and chrome down a public road.
Id. at 858. The court concluded that it is necessary to “consider the risk to the public of not making an immediate stop against the right of an individual to be free from such stops.... [WJhere the danger to the public is clear, urgent, and immediate, the equation must be weighted in favor of protecting the public and removing the danger.” Id. at 861. The risk to the public in not immediately stopping the vehicle was “death and destruction on the highways. This is not a risk which the Fourth Amendment requires the public to take.” Id. at 862.
[¶36.] As the Wisconsin Supreme Court in Rutzinski observed, allegations of erratic driving are distinct because intoxicated motorists “pose[] an imminent threat to the public’s safety,” as compared to offenses where the defendant is believed to possess guns or drugs. 623 N.W.2d at 526. The Rutzinski court, in holding a stop based on an allegation of erratic driving constitutional, analyzed the spectrum of tips delineated by the holdings in Adams and White. The Wisconsin Supreme Court described the tip in Adams as one involving circumstances where “police receive a tip from an informant whom they are reasonably justified in believing to be truthful.]” This is in contrast to White, where the tip involved a “a totally anonymous informant [who] provides the police with a tip which, through independent police investigation or other corroboration, indicates that the informant possesses ‘inside information.’ ” Id, at 522. Examining these cases, the Wisconsin Supreme Court ob~ *536 served that the stop in J.L. was unconstitutional because, unlike Adams, the tip relied upon did not come from a known informant who could be held responsible or whose reputation could be assessed. Moreover, law enforcement failed under White to corroborate the tip with anything more than “easily obtainable information that tends to identify the suspect.” Id. at 524. The Rutzinski court also noted that in J.L., the tip did not suggest an imminent threat to public safety. Id. at 526. Without suggesting that any such threat might eliminate the requirements of the Fourth Amendment, the Wisconsin Supreme Court nevertheless concluded that exigency might supplement the reliability of the tip and further justify an investigatory stop. Id.
[¶37.] Indeed, this “potential risk of harm to the defendant and the public is widely acknowledged to be a critical factor in assessing the reasonableness of an investigatory stop.” State v. Lamb, 168 Vt. 194, 720 A.2d 1101, 1104 (1998). When balancing the risk of harm to the public in the present case with the minimal intrusion necessitated by Deputy Kriese’s investigatory stop, the “scale of justice ... must favor the stop; a reasonable officer could not have pursued any other prudent course.” State v. Boyea, 171 Vt. 401, 765 A.2d 862, 868 (2000). And Navarette—al-though postdating these cases—does not stand for a contrary principle.
[¶38.] Admittedly, this case involves a close call. But Navarette is factually distinguishable and does not require suppression. Under these unique circumstances, where an immediately identifiable informant’s employees are on the line with dispatch and actively delaying a suspected drunk driver who is positioned behind the wheel of a car at a drive-through window, Deputy Kriese had a particularized and objective basis to stop Stanage. Given the totality of the circumstances and the context in which the tip was made, the court correctly denied the motion to suppress.

. Debough’s information, like that contained in the tip in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972), “was immediately verifiable at the scene,” and the tipster could be subject to arrest for maldng a false report. This increases the reliability of the tip.

. Provided, of course, that the information suggests ongoing criminal activity. Navarette, — U.S. -, 134 S.Ct. at 1690.